

U.S. Department of Justice

*United States Attorney  
Eastern District of New York*

MEF:SP  
F. #2023R00549

*271 Cadman Plaza East  
Brooklyn, New York 11201*

April 4, 2025

<u>By ECF</u>

The Honorable Eric R. Komitee  
United States District Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

   Re: United States v. Guillermo Cruz  
     <u>Criminal Docket No. 23-347 (EK)</u>

Dear Judge Komitee:

  The government respectfully submits this letter in advance of the defendant Guillermo Cruz's sentencing in the above-captioned case. As set forth below, a sentence within the applicable U.S. Sentencing Guidelines ("Guidelines") range—70 to 87 months' imprisonment—would be sufficient, but not greater than necessary, to achieve the goals of sentencing.

I. <u>Factual Background</u>

  As set forth in the March 14, 2025, Presentence Investigation Report ("PSR"), in or around June 2023, law enforcement agents at the Drug Enforcement Administration were investigating the defendant for his involvement in a drug trafficking organization operating in Mexico and the United States. PSR ¶¶ 2-3. In particular, law enforcement had learned that the defendant had a bedroom on the first floor of a specific residence in Brooklyn, New York (the "Subject Premises"). PSR ¶ 3. On July 31, 2023, law enforcement officers observed an unknown individual ("UI-1") enter the Subject Premises while carrying a Wal-Mart bag that appeared to be weighed down. PSR ¶ 5. The defendant and UI-1 were then observed leaving the Subject Premises, but the Wal-Mart bag no longer appeared to be weighed down. <u>Id.</u> Law enforcement believed the apparent change in the bag's weight indicated that UI-1 had transported narcotics into the Subject Premises. <u>Id.</u> Law enforcement officers stopped UI-1 when UI-1 attempted to leave the location, and UI-1 consented to a search of the Wal-Mart bag. <u>Id.</u> Law enforcement observed that the Wal-Mart bag contained an empty box and dryer sheets. <u>Id.</u> Law enforcement also stopped the defendant, who began fidgeting and appeared to have a suspicious bulge in his pants. <u>Id.</u> Upon conducting a pat down of the defendant, law enforcement recovered from the defendant's pants a vacuum sealed package containing approximately 190 grams of an off-white powdery substance. <u>Id.</u> Law enforcement officers

obtained a search warrant that same day to search the Subject Premises, which led law enforcement to recover additional packages of off-white powdery substances and drug paraphernalia such as wrappers and presses. PSR ¶ 6. A field test of the substances from the defendant's bedroom and the defendant's person, totaling 9.877 kilograms, was positive for fentanyl. However, a subsequent DEA chemical analysis report identified the recovered substances as 7,714.7 net grams of cocaine hydrochloride in powder form and 41.9 net grams of cocaine base in the form of a rock-like substance. PSR ¶ 5-7. Per U.S.S.G. § 2D1.1, the Converted Drug Weight for the 7,714.7 net grams of cocaine hydrochloride is 1,542.94 kilograms. PSR ¶ 8. The Converted Drug Weight for 41.9 grams of cocaine is 149.62 kilograms. Id.

On August 1, 2023, a complaint filed in the Eastern District charged the defendant with one count of distribution and possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1), prior to the DEA chemical analysis report revealing that the seized narcotics were actually cocaine hydrochloride and cocaine base. ECF No. 1. On August 2, 2023, the Honorable Vera M. Scanlon arraigned the defendant on the complaint, and the defendant was detained. Minute Entry dated August 2, 2023.

On August 25, 2023, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with one count of distribution and possession with intent to distribute fentanyl in violation of 21 U.S.C. § 841(a)(1).[1] ECF No. 8.

On September 13, 2024, the defendant pled guilty pursuant to a plea agreement (the "Plea Agreement") before the Honorable Peggy Kuo to 21 U.S.C. § 841(a)(1), the sole count in the Indictment, with the penalty provision set forth in § 841(b)(1)(C) for possession of a Schedule I or II controlled substance. Docket Entry dated September 13, 2024. On November 21, 2024, Your Honor accepted the defendant's guilty plea. Order dated November 21, 2024.

II.     Applicable Law

The Supreme Court has explained that the Court "should begin all sentencing proceedings by correctly calculating the applicable [Guidelines] range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted). 18 U.S.C. § 3553(a) provides, in part, that in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]

---

[1] The DEA chemical analysis report had not yet revealed that the substances were cocaine base and cocaine hydrochloride as of this date.

       (2) the need for the sentence imposed--

          (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

          (B) to afford adequate deterrence to criminal conduct; [and]

          (C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation "or other correctional treatment." See 18 U.S.C. § 3553(a)(2)(D). Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence. The district court must also "remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6.

III.    The Guidelines Calculation

The government agrees with the Guidelines calculation as set forth in the PSR:

| | |
|---|---|
| Base Offense Level (§ 2D1.1(a)(5)) | 30 |
| Plus: Maintaining a Premises for the Purposes of Distributing A Controlled Substance (U.S.S.G. § 2D1.1(b)(12)) | +2 |
| Minus: Zero Point Offender (§ 4C1.1(a), (b)) | -2 |
| Minus: Acceptance of Responsibility (§ 3E1.1(a)) | -2 |
| Minus: Acceptance of Responsibility (§ 3E1.1(b)) | <u>-1</u> |
| Total: | <u>27</u> |

Based on a Criminal History Category of I, the Sentencing Guidelines calculate an advisory range of imprisonment of 70 to 87 months. The Guidelines calculations in the PSR and the Plea Agreement are the same. In the Plea Agreement, the defendant did not stipulate to the Guidelines calculation but agreed not to challenge the drug type and quantity set forth in the laboratory reports.

IV.    Analysis

The Court should impose a sentence within the Guidelines range of 70 to 87 months' imprisonment. This sentence would appropriately reflect the seriousness of the defendant's conduct and the significant danger that narcotics, such as cocaine, pose to the community. In addition, this sentence would serve as a specific deterrent not only for others but also for the defendant, who, as described below, committed a serious offense in both possessing a large quantity of narcotics and maintaining a premises that allowed him to distribute such drugs.

3

First, the offense of conviction, distribution and possession with intent to distribute narcotics, is serious. The defendant committed an inherently serious crime by possessing with intent to distribute a significant quantity of cocaine base and cocaine, both classified as Schedule II drugs by the DEA. See https://www.dea.gov/drug-information/drug-scheduling. The defendant knowingly possessed over 7.7 kilograms of cocaine and cocaine base, an offense for which Congress has prescribed significant penalties. See 21 U.S.C. § 841(b)(1)(C). The sheer weight of the cocaine indicates that the defendant possessed the narcotic to distribute it into the community, which could cause immense harm due to its potential for abuse and its effects on one's mental and physical capabilities. Additionally, when law enforcement searched the Subject Premises and recovered the cocaine, they recovered drug paraphernalia such as presses and sealers, further indicia that the defendant possessed the cocaine to distribute it and maintained the Subject Premises for that purpose.

Moreover, the defendant also engaged in proactive efforts to avoid law enforcement, likewise earning the trust of the DTO. For example, the investigation revealed that the defendant intentionally screened his client base, including using a trusted middleman to conduct business with new counterparties. As such, it was only after several deals through a middleman that a confidential informant was able to deal directly with the defendant.

Additionally, the defendant's possession of such a large quantity of narcotics, which was worth a substantial sum of money, is evidence that he was trusted by the DTO. Indeed, in the wrong hands, the DTO risks detection by law enforcement or theft from others who either use or wish to sell the narcotics themselves. Based on the investigation, the defendant charged customers approximately $ 23,000 for a kilogram of cocaine. At the time of the defendant's arrest, law enforcement recovered over 7.7 kilograms of cocaine and cocaine base—based on the $23,000 per kilogram rate between the confidential informant and the defendant, the total value for this weight of narcotics could have exceeded $177,000. In addition, at least one witness observed the defendant's home to contain large quantities of narcotics and approximately $300,000 of cash, consistent with proceeds from trafficking significant quantities of narcotics.

Relatedly, the defendant maintained a premises to facilitate the offense. PSR ¶ 8, 13. As noted in the PSR, the defendant was arrested with a key on his person that unlocked a deadbolt that opened the door to the defendant's bedroom. PSR ¶ 4. The defendant's maintenance of a premises to store and distribute the cocaine further supports that he possessed the cocaine with intent to distribute it via illicit sales, and supports the enhancement in U.S.S.G. § 2D1.1(b)(12). In fact, law enforcement not only observed a suspected narcotics sale at this defendant's stash house immediately prior to the defendant's arrest, but also learned of cocaine sales on prior dates during the pendency of the previously described investigation. See id.

Meaningful custodial sentences are often warranted in drug distribution cases – both to deter the defendant being sentenced from continuing to engage in criminal activity and to discourage others similarly situated from engaging in the same behavior. See 18 U.S.C. § 3553(a)(2)(B). General deterrence concerns are particularly relevant here given the number of narcotics routinely being smuggled and distributed within the United States, and the finite resources available to detect and prevent the narcotics epidemic poisoning our communities.

In sum, the defendant's conduct posed a clear risk and danger to the public. Thus, the Court's sentence must afford adequate deterrence to criminal conduct and protect the public from further crimes of this nature. See 18 U.S.C. § 3553(a)(2)(B)-(C). The Court should consider the need for this sentence to promote respect for the law and to afford adequate deterrence not just to the defendant, but also others contemplating similar acts. See 18 U.S.C. § 3553(a)(2)(B). Narcotics distribution can lead to collateral consequences such as individuals becoming addicted or dying from drug abuse or the proliferation of violence when drug deals go awry, and a serious sanction is warranted to deter others from committing similar offenses and to deter this specific defendant. See generally Memorandum Opinion, United States v. Kastanov, 22-CR-265 (WFK), ECF No. 169 (E.D.N.Y. Sep. 30, 2024) (sentencing the defendant to 48 months' imprisonment, within the applicable Guidelines range, for trafficking "deadly narcotics," after considering the § 3553(a) factors including the nature of the offense). Moreover, unlike in other cases where defendants in this district received a below-Guidelines sentence, the defendant here was actively involved in the DTO and did not try to cooperate. See United States v. Diaz-Bautista, No. 20-CR-433 (WFK), 2024 WL 2772936, at *3–5 (E.D.N.Y. May 30, 2024) (sentencing the defendant to 23 months' imprisonment, below the Guidelines range of 30 to 37 months' imprisonment where the defendant allowed his co-defendants, who were his brothers and one of whom lived with the defendant, to use his home to store cocaine but was otherwise uninvolved with any drug trafficking activity); Sentencing Transcript, United States v. Yhonny Alvarez Rivera, 22-CR-476 (RPK), ECF No. 56, Tr. at 12:12-13:9 (sentencing the defendant to 33 months' imprisonment, below the Guidelines range of 57 months, despite acknowledging the serious nature of the defendant's possession of kilograms of narcotics because the defendant attempted to cooperate with the government and the duration of the defendant's involvement in drug trafficking was short and limited).

V.   Conclusion

For the foregoing reasons, the government submits that a sentence within the applicable Guidelines range—70 to 87 months' imprisonment—would be appropriate and in the interests of justice.

>    Respectfully submitted,
>
>    JOHN J. DURHAM
>    United States Attorney
>
> By:   /s/ Stephanie Pak
>    Stephanie Pak
>    Assistant U.S. Attorney
>    (718) 254-6064

cc:   Clerk of the Court (EK)
   Lance Lazzaro, Esq. (Defense Counsel) (by ECF and E-Mail)
   U.S. Probation Office (by ECF and E-Mail)